**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARTIN G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br><br> Defendant. | Civil Action No. 24-10482 (SDW) <br><br> **OPINION** <br><br> December 17, 2025 |

**WIGENTON, District Judge.**

Before this Court is Plaintiff Martin G.'s[1] ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Sharon Allard's ("ALJ Allard") denial of Plaintiff's claims for supplemental security income ("SSI") and a period of disability and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (D.E. 1.) This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/ files/SO21-10.pdf.

1

### A.     Factual Background

Plaintiff is twenty-one years old and alleges that he became disabled on September 17, 2015 (the "alleged onset date"), at eleven years old (D.E. 4 & 5 (Administrative Record ("R.")) 151.)  Plaintiff has no past relevant work.  (R. 2185.)

### B.  Procedural History

#### i.     Initial Application, Administrative Hearing, and Decision

On December 20, 2017, Plaintiff's Mother, Beatrice Forty, applied for SSI on Plaintiff's behalf with an alleged onset date of September 17, 2015.[2]  (R. 17.)  The claim was initially denied on September 19, 2018, and upon reconsideration on February 26, 2019.  (R. 85, 93.)  Pursuant to Plaintiff's request for a hearing, ALJ Allard held a telephonic administrative hearing on February 26, 2020.[3]  (R. 17.)  Then on August 18, 2020, ALJ Allard issued a written opinion finding Plaintiff was not disabled under Section 1614(a)(3)(C) of the Act and denying his SSI request.  (R. 22.)

To determine whether Plaintiff was disabled, ALJ Allard considered the three-step sequential evaluation process utilized to assess disability claims brought by those under eighteen years of age and "all relevant evidence."  (R. 17.)  At step one, she concluded Plaintiff had not engaged in substantial gainful activity since December 20, 2017—the application date.  (R. 18.)  At step two, the ALJ determined Plaintiff had the following severe impairments:  glaucoma, cataract, obesity, and inflammatory arthritis.  (R. 18.)

At step three, ALJ Allard held that Plaintiff did not have an impairment or combination thereof that met, medically equaled, or functionally equaled the severity of one of the listed

---

[2] Plaintiff's Mother applied on his behalf because he was still a minor.  (R. at 17.)

[3] Plaintiff was represented by attorney James Langton at the February 26, 2020 administrative hearing.  (R. 17.)

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–19.) ALJ Allard reasoned that the medical evidence did not establish that Plaintiff's impairment or combination thereof met or was medically equivalent to a listed impairment, specifically considering Listings 102.04 and 114.09. (R. 18–19.) As to functional equivalency, ALJ Allard considered the six domains and concluded Plaintiff had: a less than marked limitation in (a) acquiring and using information, (b) attending and completing tasks, and (c) moving about and manipulating objects; no limitations in (a) interacting and relating with others and (b) the ability to care for himself; and a marked limitation in health and physical well-being.[4] (R. 19–20.) Thus, ALJ Allard denied Plaintiff's application. (R. 22.) Thereafter, the Appeals Council denied Plaintiff's request for review and he appealed to this Court.

ii.  **Appeal to District Court & Judge McNulty's Decision**

The Honorable Kevin McNulty, U.S.D.J. (ret.) reversed and remanded the Commissioner's decision after concluding the ALJ committed a harmful legal error by failing to consider Plaintiff's obesity at step three. *Forty v. Comm'r of Soc. Sec.*, No. 21-6519, 2022 WL 2981001, at *4 (D.N.J. July 28, 2022). Judge McNulty described the ALJ's analysis at step three as "lack[ing] any meaningful consideration of how [Plaintiff]'s obesity and other impairments cumulatively affected" or "might erode" Plaintiff's functional capabilities. *Id.* Judge McNulty noted the ALJ's opinion lacked a holistic analysis, as there was no mention of Plaintiff's Body Mass Index ("BMI"), whether Plaintiff sought treatment for his obesity, whether the obesity worsened Plaintiff's arthritis or asthma, or whether Social Security Ruling ("SSR") 19-2p was considered. *Id.* at *5. Given that Plaintiff made a sufficient showing that the ALJ's ultimate determination as

---

[4] Relevant to this appeal, the ALJ only briefly stated the following regarding Plaintiff's obesity: "He has also been diagnosed with childhood obesity, for which his mother received literature on healthy eating." (R. 21.)

3

to his functional limitations "would have been altered had the ALJ given meaningful consideration to [his] obesity," Judge McNulty concluded Plaintiff was entitled to a remand. *Id.* at *6. Notwithstanding, Judge McNulty "express[ed] no view on the ultimate ruling of whether [Plaintiff]'s impairments meet or equal the severity of an impairment in the Listing of Impairments." *Id.*

### iii. Administrative Hearing on Remand

Plaintiff was represented by counsel at the administrative hearing held on January 25, 2024. (R. 491.) ALJ Allard heard testimony from Plaintiff and an impartial vocational expert Brian Daly ("VE Daly"). (*See generally* R. 498–35.)

Plaintiff testified about his right eye's condition and the condition's impact on his wellbeing and daily living. (R. 498–501, 503–04.) He explained due to the film buildup in his right eye, he had tubing to "try and remove the inflammation," but that was ultimately insufficient which resulted in his original eye doctor recommending cataract surgery. (R. 499–500.) In addition to having surgery, at the time of the hearing Plaintiff was taking Acetazolamide, used eye drops twice daily, and received monthly Remicade infusions. (R. 499–504.) Plaintiff testified that he still has eye pain approximately two to three times per week which endures for about three to four hours and that this pain prevents him from leaving his house about four to five times per month. (R. 513–14.) Plaintiff explained the headaches and pain caused by his eye problems led him to miss about one to two days of school per week as a child, about half the time at his part-time jobs as an adult, and a third of the instructional days of his vocational school program.[5] (R.

---

[5] Plaintiff held employ with Red Lobster as a host until November 2022. (R. 520–21.) When asked by the ALJ why he left the job, he responded: "There were a lot of things going around, like with managers and I didn't really like the drama behind it and so, I left." (R. 521.) Similarly, Plaintiff left his job as a to-go specialist with True Foods Kitchen because he felt overwhelmed and felt he was being underpaid. (R. 522.)

504, 523–26.) Notwithstanding, Plaintiff stated he had not experienced a rheumatoid arthritis flare up in about six months, had lost sixty pounds, and had not recently experienced any problems with his asthma (R. 505, 508, 516.)

VE Daly testified that an individual of Plaintiff's age, background, experience, and education with monocular vision and the capability to perform at the light level of exertion would be capable of performing Plaintiff's past work as either a host or fast-food worker. (R. 532–33.) Additionally, VE Daly stated such an individual could perform the work of a marker. (R. 533.) However, the individual "could not be off task more than 10 percent of the workday in addition to normal scheduled breaks," nor could they be absent twice per month on a recurring basis. (R. 534.) In his analysis VE Daly assumed the individual would work a full-time job. (R. 535.)

iv. **ALJ Allard's Decision on Remand**

On July 26, 2024, ALJ Allard issued a decision concluding Plaintiff was not disabled from December 20, 2017, the date he filed his application.[6] (R. 2186.)

a. *Claim for Period Prior to Attaining Age Eighteen*

First, ALJ Allard analyzed Plaintiff's SSI claim for the period prior to Plaintiff attaining age eighteen under three-step sequential evaluation process. At step one, ALJ Allard concluded Plaintiff had not engaged in substantial gainful activity since the application date because his earnings in 2021 through 2023 did not approach the substantial gainful activity level. (R. 2169.) At step two, the ALJ determined Plaintiff's right eye blindness, chronic glaucoma, cataracts, chronic uveitis, inflammatory arthritis, and obesity were severe impairments and that his asthma was a non-severe impairment. (R. 2169–70.) At step three, the ALJ concluded Plaintiff's

---

[6] Initially Plaintiff applied for SSI but subsequently filed an application for Title XVI disability benefits. ALJ Allard's July 26, 2024 decision consolidated the claims. (R. 2164.)

5

impairment or combination thereof did not meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 2170–71.) More specifically, as to whether Plaintiff's impairment or combination thereof met or medically equaled one of the listed impairments, ALJ Allard considered not just the evidence in the record, but also specifically detailed why Listings 102.02 and 114.09 were unmet and unequal. (R. 2170.)

As to functional equivalence, ALJ Allard proceeded to examine Plaintiff's limitations in performing activities in the six domains vis a vis "other children of the same age who do not have impairments." (R. 2171.) ALJ Allard concluded Plaintiff had no limitation in interacting and relating with others; less than marked limitations in acquiring and using information, attending and completing tasks, moving about and manipulating objects, and caring for oneself; and a marked limitation in health and physical well-being. (R. 2171–72.)

While the record supported finding that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," ALJ Allard reasoned, it did not support Plaintiff's allegations concerning the "intensity, persistence and limiting effects" thereof for several reasons. (R. 2172.) One, the longitudinal record "more often document[ed]" normal left eye vision, gait and posture, motor strength, and muscle tone; full range of motion of all joints; and no swelling, effusion, redness, warmth, tenderness, defects or deformities. (R. 2173.) Relevant to this appeal, ALJ Allard also considered Plaintiff's obesity and found Plaintiff "had a lack of significantly abnormal examination findings." (R. 2173.)

Two, Plaintiff's description of his daily activities was not commensurate with his complaints of disabling symptoms and limitations. (R. 2173.) For example, Plaintiff's report that he exercised and lifted weights was inconsistent with his report of debilitating arthritis. (R. 2173.) Thus, ALJ Allard concluded that Plaintiff had a higher level of functioning than that

alleged. (R. 2173.) Third, the ALJ determined Plaintiff's treatments were "routine and/or conservative in nature" and provided adequate relief. (R. 2173.) Lastly, ALJ Allard considered the opinion evidence in the record and determined whether each examiner or consultant's conclusions were supported and persuasive. (R. 2173–75.) To the extent that findings were unsupported or unpersuasive, ALJ Allard provided citations to the record. The ALJ concluded that because Plaintiff did not have either marked limitations in two domains or an extreme limitation in one domain, he did not have an impairment or combination thereof functionally equivalent to a listing. (R. 2175.) Thus, the ALJ held that Plaintiff was not disabled prior to obtaining age eighteen. (R. 2181.)

### b. *Claim for Period After Obtaining Age Eighteen*

Next, ALJ Allard analyzed Plaintiff's disability claim for the period after obtaining age eighteen pursuant to the five-step disability test. At step one, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since the application date. (R. 2169.) Key to step two, the ALJ noted Plaintiff did not develop any new impairments since turning eighteen. (R. 2181.) For step three, the ALJ then concluded the record did not support finding that Plaintiff's impairment or combination thereof met or medically equaled the criteria of a listed impairment after giving particularized attention to Listing 2.02, relevant to Plaintiff's vision; Listing 14.09, pertinent to inflammatory arthritis; and SSR 19-2p, applicable to obesity. (R. 2181–82.)

ALJ Allard found Plaintiff has the residual functional capacity to perform light work based on three reasons. (R. 2182.) First, the ALJ found the longitudinal evidence did not support Plaintiff's claimed degree of limitation, particularly because he had received treatment for his severe impairments, had normal vision of the left eye, and the record lacked other positive findings regarding his vision and obesity. (R. 2183.) Second, ALJ Allard reasoned, Plaintiff's

ability to engage in activities—such as doing laundry, mowing the grass, shopping, engaging in personal care, working out and lifting weights—was "indicative of a higher level of functioning" than that alleged and was inconsistent with total disability. (R. 2184.)  Third, the ALJ concluded Plaintiff's treatment provided "adequate relief of the alleged symptoms." (R. 2184.)  At step four, ALJ Allard noted Plaintiff had no past relevant work. (R. 2185.)  At step five, relying on VE Daly's testimony, the ALJ found Plaintiff could perform work that exists in significant numbers in the national economy such as a fast-food worker, host, or marker. (R. 2185.)  Given the prior findings, the ALJ held Plaintiff is not disabled within the meaning of the Act. (R. 2186.)

### v. Current Appeal

After ALJ Allard's July 26, 2024 decision became final on September 26, 2024, Plaintiff filed the instant appeal with this Court. (D.E. 1 at 2). *See* 20 C.F.R. § 404.900;[7] 42 U.S.C. § 405(g).  The parties timely completed briefing. (D.E. 8, 10.)

## II. LEGAL STANDARD

### A. Standard of Review

When reviewing applications for Social Security disability benefits, this Court exercises plenary review of legal issues decided by the ALJ and upholds factual findings if supported by substantial evidence. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405 (g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive.").  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S.

---

[7] This opinion cites only the regulations addressing DIB found at 20 C.F.R § 404.1500 *et seq.*, and not the parallel regulations addressing SSI found at 20 C.F.R. § 416.900 *et seq.*, because they are "identical" for present purposes. *Rutherford v. Barnhart*, 399 F.3d 546, 551 n.3 (3d Cir. 2005).

197, 229 (1938)). Under the substantial evidence standard, the threshold for evidentiary sufficiency is not high. *Id.* An ALJ's decision cannot be set aside merely because this Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986). So long as the ALJ's decision sufficiently develops the record and explains its findings to permit meaningful review, the ALJ need not "use particular language or adhere to a particular format" when conducting the analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### III.  DISCUSSION

#### A. The Three-Step Evaluation Test for Child Disability Claims

The Act establishes a three-step sequential evaluation for determining whether a child is disabled within the meaning of the statute. 20 C.F.R. §§ 416.924(a)-(d). The claimant bears the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b). If it does, the inquiry ends because the claimant is not disabled. *Id.* At step two, the ALJ decides whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the claimant does not have a medically determinable impairment, or if the claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the claimant is not disabled. *Id.* At step three, the ALJ determines whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment

that meets, medically equals, or functionally equals a listing's requirements and meets the durational requirement, the claimant is disabled. 20 C.F.R. § 416.924(d)(1).

### B. The Five-Step Disability Test for Adult Disability Claims

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019). The ALJ determines whether the claimant: first, is currently engaged in substantial gainful activity ("SGA"); second, has a "severe" and "medically determinable" impairment; and third, has an impairment, or combination thereof, that is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specific medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Prior to reaching the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [his or her] limitations," as it relates to meeting "the physical, mental, sensory, and other requirements of work. *Id.* §§ (a)(4)(iv), 404.1545(a)(4). Then, at step four, the ALJ determines whether the claimant can still do his or her past relevant work[8] by comparing his or her RFC to the "physical and mental demands" of that work. *Id.* §§ (a)(4)(iv), (f). Lastly, at step five the ALJ decides whether the claimant "can make an adjustment to other work" considering his or her RFC, age, education, and work experience. *Id.* § (a)(4)(v). The claimant bears the burden of proof at all steps except step five, where the burden is on the Commissioner. *Hess*, 931 F.3d at 201.

### C. Plaintiff's Arguments

---

[8] Past relevant work is work performed by the claimant "within the past five years that was substantial gainful activity and that lasted long enough" for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1)(i).

On appeal, Plaintiff challenges the ALJ's conclusion at step three under both the child and adult standards.[9] As to Plaintiff's claim under the child standard, Plaintiff argues the ALJ failed to consider Plaintiff's "extremely high level of obesity" in connection with "any of the 6 domains of childhood development." (D.E. 8 ("Mov. Br.") at 13–14, 16.) Plaintiff asks that this Court remand "the period covered by [P]laintiff's childhood obesity disability claim." (D.E. 8 ("Mov. Br.") at 17.) Under the adult standard, Plaintiff argues the ALJ erred in her medical equivalence analysis under step three by failing to mention "obesity" and failing to consider the cumulative impact of Plaintiff's visual and inflammatory impairments with his obesity. (*Id.* at 17–18.) As to the RFC analysis, Plaintiff claims the ALJ similarly failed to assess the impact of Plaintiff's obesity "with his comorbid inflammatory disease," and characterizes the ALJ's analysis as lacking "an actual articulated, written and reasoned consideration," given that the decision does not "explain the extent" of the effect of Plaintiff's obesity on other body systems. (D.E. 8 at 20.)

In reviewing the ALJ's step three analysis under both the child and adult standards, this Court concludes the ALJ properly and adequately considered Plaintiff's obesity. The ALJ's functional equivalence analysis for step three under both standards noted Plaintiff's body mass index ("BMI") and stated that "obesity . . . ha[d] been considered with the other impairments." (R. 2173 (noting a BMI of 42), 2183 (stating Plaintiff had a BMI range of 30 to 35).) This was sufficient. *See J.M. v. Comm'r of Soc. Sec.*, No. 24-8438, 2025 WL 3312259, at *5 (D.N.J. Nov. 28, 2025) (concluding that an ALJ's statement that "was inclusive of all of Plaintiff's impairments" sufficiently demonstrated the ALJ considered the plaintiff's obesity because "[t]here is no reason to believe the ALJ did not do what it said it did."). Further, to the extent ALJ Allard did not specifically mention obesity in her functional equivalence analysis under the adult standard, she

---

[9] Accordingly, this Court does not discuss steps one and two under the child disability standard or the adult standard.

did consider it in her RFC analysis, (R. 2183–84). *See J.M.*, 2025 WL 3312259, at *5 ("The Third Circuit and other courts in this district have held that an ALJ's failure to discuss obesity at step three is not a basis for remand when the ALJ properly considers obesity in the RFC analysis."). ALJ Allard did not have to "use particular language or adhere to a particular format in conducting [her] analysis." *Jones*, 364 F.3d at 505. In reviewing her July 26, 2024 decision, this Court is convinced ALJ Allard sufficiently developed the record and explained her findings such that her decision is supported by substantial evidence. *Id.*

In any event, Plaintiff has failed to show prejudice under the harmless error doctrine. *See Shinseki v. Sanders*, 556 U.S. 396, 409 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). A claimant "must show how any error in the step-three analysis would 'affect the outcome of the case.'" *Collado v. Comm'r of Soc. Sec.*, No. 19-13458, 2020 WL 5939793, at *5 (D.N.J. Oct. 6, 2020) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). "[W]hen [a] claimant fails to provide record citations or discussion of the listing and merely contends that the ALJ's findings are inadequate, the Third Circuit has regularly affirmed the ALJ's findings." *Id.* Plaintiff, who bears the burden at step three, merely attacks ALJ Allard's decision but fails to provide proper citations to the record to show how his obesity—in combination with his other impairments—matches or is functionally equivalent to a listing. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000). Thus, Plaintiff's challenges to the ALJ's conclusions at step three fail. *See J.M.*, 2025 WL 3312259, at *6 (rejecting a plaintiff's challenge to an ALJ's step-three analysis because notwithstanding that "the ALJ could have provided a more detailed analysis," the plaintiff did not "point to specific evidence in the record that demonstrated he should succeed").

**IV.   CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

_/s/ Susan D. Wigenton_
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties